Good morning all. Our first case for argument this morning is Keep Chicago Livable v. City of Chicago v. Sato. May it please the court, my name is George Sato. I am the attorney for Keep Chicago Livable and six individual plaintiffs, four of whom are hosts, two of whom are out-of-state guests. I would like to address first the Chicago Shared Housing Ordinance and a fatal defect in the core definitions used in this law. This is an issue that I raised in my brief, the city hasn't answered it, and I believe the district court has overlooked it and has to do with the definition of a shared housing unit under this law and why it's defective under the First Amendment Freedom of Speech Clause. Second, if the First Amendment Freedom of Speech Clause applies, I would like to discuss why strict scrutiny should apply in this case because this is content-based discrimination as well as a classic prior restraint. Third, I would like to address any questions that this court might have about the non-speech arguments that we've raised, including freedom of association, equal protection, as well as the jurisdictional objections raised by the city of Chicago. So I'd like to begin by getting to the fatal defect I discussed previously in the definition of a shared housing unit. The definition, the term shared housing unit, which is the target of the Chicago Shared Housing Ordinance, is defined in section 4-14-010 of the ordinance, and it's defined as a dwelling unit containing six or fewer sleeping rooms that is rented or any portion therein is rented for transient occupancy by guests. The term shared housing unit shall not include one, single room occupancy buildings, two, hotels, three, corporate housing, four, bed and breakfast establishments, five, guest suites, or six, vacation rentals. And I would submit that the definition of vacation rentals is substantially similar. Now, both the definitions of vacation rental and shared housing units exclude guest suites, which are defined in section 4-6-300A as a dwelling unit that is available for rent or hire for transient occupancy solely by invitees or family members of residents of the building which contains the dwelling unit and is not offered, advertised, or made available for rent or hire to members of the general public. The fatal defect at issue here is that when you combine those two definitions, what the city is regulating is not transient occupancy for money or even transient occupancy of money that's listed on a particular site. It's saying this law is subject to, or transient occupancy for money that is advertised to members of the general public is subject to regulation. The demarcation between what is regulated and unregulated depends on whether or not it's advertised. And pursuant to this court's previous authorities, sites, cases such as ACLU v. Alvarez, when the speech element is what triggers the regulation, when there's a violation of speech and non-speech elements, the First Amendment scrutiny is required. I would then like to address, once the First Amendment scrutiny applies, then the district court's analysis does not apply, or is erroneous. I believe the district court overlooked this. The city believes that this law simply says that nobody may rent a shared housing unit without first registering with the city. However, if the definition of shared housing unit incorporates speech as a necessary part of that definition, then the First Amendment scrutiny does apply. The district court did not apply any sort of scrutiny, whether it's intermediate scrutiny or strict scrutiny to this law. And I believe at least on a remand, that oversight needs to be corrected, and a preliminary injunction needs to be imposed on further enforcement of this law until that analysis is completed. But I believe that this court can even go further on, as a matter of law, and find that this law actually operates as content-based discrimination. And that would be following the case of Reed v. Gilbert. This is count three of our amended complaint. What section 4-14-020 states is that no unit that is listed on a shared short-term residential rental intermediary site, which I believe is a euphemism for Airbnb. So no unit that is listed on Airbnb may be rented without a registration, which is a particularly onerous process and comes with onerous restrictions. This amounts to essentially channel discrimination, because this is not something that applies to sites that hotels use on the internet to book or arrange for short-term rentals. This only applies to a particular site or type of site, Airbnb, which is used by a particular kind of speaker, which is an individual host, not a big corporate entity. So because of that, the subject matter of discussion, which is guests welcome in my private home, is being subject to specific treatment. It's singled out and treated differently than other types of guests. They're commercial guests. They're not social guests, right? In Airbnbs? Yeah. I mean, what's the distinction between the hotel resident and the Airbnb resident? I think that that's, in large part, they're the same. I mean, most people are traveling to Chicago and they want an accommodation. That being said, we do allege that there are differing factors about being on Airbnb, that it's a different kind of community. There's a different type of interaction that occurs. Many Airbnb hosts are actually letting out a second bedroom, a guest room, as it were, and they stay and sleep under the same roof with their guests and thereby get to know them. That's a very popular way of doing it. And so it is different. You don't have your hotel proprietor sleeping in the same room as you when you stay at a hotel. And of course, regardless of whether it's a whole apartment rental or a partial rental, you're staying in somebody's home. And they've designed it. They have amenities. They can give you advice as to where to go in the neighborhood, what they like to do. Again, not just the interior decor, but it's a different type of experience. Also, I think the more practical reason is most people like to have a kitchen, so it allows for a different type of stay. Mr. Sato, can I ask you a question about the organization itself? Sure. Is it a membership organization? No. No, we don't charge... More of an advocacy organization, kind of an organization formed around the cause. Yeah, I think it would be more of the latter because we don't charge a membership fee. Are there members? Yes. Yeah. In fact, we have a board of directors. We have members. We have events. We actually, this summer, hosted a number of street fair festivals in Chicago. Is there ever a question raised about the organization's standing as a plaintiff under the associational standing test? There has not been. Okay. And are the members, members like Mr. Wolf and others? Or who are the... Well, Mr. Wolf was on the board. We have a three-member board, and now we have... Yeah, now it's Mark Manning is our president. We have other people who are officers and on the board. I think we have actually nine people on our board right now. So I guess those are the technical members because they're officially on our board of directors. How about any question as to the standing of the named plaintiffs and I guess the amended complaint? You know, there's been a lot of time that has passed since... You know, it's been 18 months since we've been in court. So some of these plaintiffs have either stopped doing Airbnb or they have moved. So we would probably need to revisit that on remand and clean that up so that the people that are named plaintiffs are individuals. Obviously, I've used them as illustrative of the type of Airbnb host that's out there. If I might continue, once First Amendment scrutiny applies, this also should be looked at as what it is. This law is a classic paradigmatic prior restraint because it requires individuals to apply for permission to the city of Chicago before they may post content to the internet about their shared housing unit on a site like Airbnb. The city has the power to deny this request, to suspend or revoke a registration, and thereby order people to take down content off the internet. These registrations have to be renewed annually. If it's denied or revoked, the burden falls on the host to follow notice of appeal within 10 calendar days. And if they fail to do that, then that results in a finding of default, final determination, making that host and that property ineligible for listing on Airbnb unless that host were to file an appeal with the circuit court within 35 days under the Administrative Procedure Act. This final determination becomes permanent. These people become banished from using that site forever, even if their situation changes. There's no mechanism for correcting that. The city's made several claims that this is commercial speech. This should be governed under the intermediate scrutiny standard and that it's therefore illegal. But I think it's important to recognize that in a prior restraint scheme, it's always going to be illegal. That's the definition of how... Therefore, the application of the commercial speech doctrine and the illegality threshold prong, when you're talking about a prior restraint scheme, is always going to be problematic and circular. It would essentially make the speech analysis a one-step test. Is this commercial speech or not? And because the law creates a scheme that allows an administrative censor to declare certain speech illegal, then it's necessarily illegal. There's actually an interesting... I was looking for a single case that applied... A Supreme Court case that applied the commercial speech doctrine in the context of a prior restraint scheme, and it was very difficult to find one. I think that the only real discussion... Counsel, do you think the securities laws all violate the First Amendment? No one can issue information about a prospective security without registering with the SEC. I... That would, I think, be a prior restraint scheme in a sense. On your view, that would be unconstitutional. Well, no, I don't think the prior... Do you think your membership in the bar violates the First Amendment? No. Why? Well, again, just because it's a prior... What is legal advice but speech? It is speech, of course. And so, therefore, on your rationale, the requirement that lawyers join the bar in order to speak to clients violates the First Amendment. Well, just because it's a prior restraint scheme doesn't mean it violates the First Amendment. But there are compelling reasons for that. But the whole point of your position was if any speech is restricted, that violates the First Amendment, even if the principal thing being regulated is conduct, like renting a space in which to live. That is not... I don't think that that's my position, that anything that restricts speech is unconstitutional. I believe that this means that... That's what you were just saying on your feed, that it's a classic prior restraint, even though the regulation is regulation of conduct. So I thought I would give you some regulations that are regulations of nothing but speech. All the securities laws, all the laws affecting who can be in the bar and what they can say, they regulate speech and not conduct. Why isn't it, from your argument, a fortiori, that all the securities laws are unconstitutional, all the food and drug laws are unconstitutional, and all the laws regulating lawyers are unconstitutional? Well... It would be a new day. It would be a new day. No, I don't believe that those are all unconstitutional. Again, under the Freedman v. Maryland case, if you have procedural safeguards in place, then a prior restraint scheme can be constitutional. Obviously, it simply dictates the standard of scrutiny to be applied. In each of those... There is no regulation of what the lawyers say to clients. Lawyers can't say anything at all to their clients to give legal advice without being a member of the bar. Indeed, you can't be a lawyer without being a member of the bar. It's not remotely like Freedman, where particular movies were submitted to a board. I think you've got a lot of trouble reconciling your position with the established legal order in the United States. Well, that's on the prior restraint argument. I believe that this is still content-based discrimination, regardless of whether this court believes that prior restraint schemes are a fortiori or unconstitutional. Same problem. The securities law apply only to speech about securities. The laws about illegal practice of law apply only to speech dealing with the practice of law. And on your view, that's all content discrimination and all unconstitutional. You really need to give an explanation for why this kind of regulation is different from kinds of regulation that you're, I think, quite sensibly unwilling to attack. I think that the problem with this law... When you go into a grocery store, you see that on the side of every item, there are statements about what's in it. Right. It's compelled speech. And it's content discrimination because it's speech about what's in this package, rather than something else. And it just goes on and on. Yeah. What I'm talking about, I can't discuss every single instance, but the Zauterer case would be... But you need to explain what's different about this situation where you are effectively saying all regulations that have incidental effects on speech violate the First Amendment. And that seems to be the burden of your argument. I'm just trying to figure out whether you are willing to face up to its consequences. I believe that the difference here is that this defines... It goes to the fatal defect in the definition of what a shared housing unit is. It is not only conduct, but it's conduct that is advertised. The non-speech element is not what triggers the regulation. It is the speech element that triggers the regulation. The fact that you advertise it. You can otherwise, without listing on those sites... It is the speech element that triggers regulation of membership in the bar. Anybody can study law and think about law, right? But if you want to speak about law to clients, you have to be a member of the bar. It's the speech element that regulates food and drug laws. If you just want to do research about what good food chemistry is, go right ahead. And so on. That's why I'm trying to pursue how this is different. Well, okay. So one of the reasons why this is different, it has to do with the new Packingham case, which has to do with the fact that this is regulation of the internet and social media. And that's considered now by the Supreme Court a unanimous decision to be a public forum. So a different type of analysis must apply. Today's public park is the internet, social media in particular. I just don't get it, right? If you cannot legally offer legal advice to clients, you cannot legally say on the internet, but I'm a lawyer and allowed to practice law. It will land you in prison. Exactly. Because the underlying conduct, which again, is it speech? Is that conduct of practicing law? The underlying conduct is illegal. So to advertise that conduct would also be prohibitable. Here, the underlying conduct is defined in terms of speech. Mr. Sano, can I ask you a question on a different front? Sure. You have remaining open in the district court. They've not been dealt with in some time. A point you emphasize in your brief, First Amendment, associational claims and an equal protection claim. Correct. Is there not a risk, as the city points out, of piecemeal appeals here that should raise a concern about our jurisdiction? Well, I believe that there's a risk of piecemeal appeals simply because of how the district court has decided to parcel out decisions on our amended motion for preliminary injunction. She's only ruled on one or one and a half of our claims. We have our association protection claims still unanswered and unruled upon. So the unfortunate, the risk is that unless this court were to remand with instructions to enter a preliminary injunction or a free speech argument, that yes, we would have to then complete the analysis. Does a district judge ever have to do that? Plaintiff moves for a preliminary injunction and says, I want it for reason A. District judge says no. Is a plaintiff ever entitled to a second bite at the apple saying, well, and now I've got a new reason. Well, I think... Why can't the district judge say, no, you've had your request for a preliminary injunction. We'll now move to your request for a permanent injunction. Make all your arguments, but your request for preliminary relief has been decided. Right, anything wrong with that? Well, it is wrong in this case where the district court judge... Forget about this case. Order. Is there anything wrong with... In general. With the district judge saying, you just get one motion for a preliminary injunction. You can't keep moving multiple times for preliminary relief. We need to get to the main event. I believe that in most cases that should be fine. I think there are certain cases where it might not be fine. It depends on the circumstance. You know, the real question is, is there a reprimand? Has any court ever said that a district court must entertain sequential motions? For a preliminary injunction. Not to my knowledge. And not to mine either. So here's another area where you are asking for, well, I think the word unprecedented is the right word. Again, if I might point out the difference in this case. You want us to do something to make an order to a district court that the American legal system just doesn't tell district judges they must do. Conversely, I've seen no case that says a district court can't entertain multiple. The difference here is also the district court judge ordered me to file an amended motion for a preliminary injunction because the city of Chicago amended the law. And so I had to file an amended complaint. With that, Your Honor, I will reserve the little time I have for rebuttal. Thank you, Your Honor. Thank you, Mr. Sano. Mr. Collins. May it please the court. The district court soundly denied the first motion for a preliminary injunction because plaintiffs failed to show a likelihood of success on the merits of their First Amendment claims. Plaintiffs also raised a number of other claims for injunctive relief in this appeal. But this court lacks jurisdiction to review them  a preliminary injunction for a preliminary injunction. And I'm not going to make an injunction based on those claims. But I'd like to begin with the First Amendment claims for which the district court did deny an injunction. As the court correctly decided, the shared housing ordinance targets business activity and not speech. So, for example, the registration requirement, which is what plaintiffs principally complain about, regulates activity by prohibiting the rental of unregistered units. Other provisions of the ordinance also regulate activity by imposing certain operational requirements on shared housing units, such as providing clean linens and towels. So because the ordinance does not target speech, but rather targets activity, it does not implicate the First Amendment. In the event this court determines that the ordinance does regulate speech, the ordinance is nevertheless valid as a regulation of commercial speech. To begin, speech in shared housing listings is commercial because it advertises the rental of a specific unit and hosts have an economic motive for listing. Moreover, under Central Hudson, commercial speech that promotes or proposes an unlawful transaction is now protected under the First Amendment.  But it's unlawful to rent an unregistered unit. So, in other words, plaintiffs are asking for the right to propose an unlawful transaction. That speech is not constitutionally protected, and the ordinance complies with that. Well, how far do you want to go in that? Suppose somebody says, we should overthrow the United States government. Right? That's an unlawful transaction. But, of course, this country was founded on the basis of that kind of speech, having overthrown a previous government. And I do believe the Supreme Court said in Brandenburg against Ohio that that kind of speech was constitutionally protected. Certainly, Your Honor. So you want to, you like your colleague on the other side of the aisle, need to be careful in what you're arguing. You can't say any speech proposing an illegal transaction is outside the First Amendment. We would point to the Supreme Court's Pittsburgh press case. You think it overruled Brandenburg against Ohio? No, I don't, Your Honor. No, you don't. I think in Pittsburgh press, an ordinance made it illegal to discriminate on the basis of sex in employment. And the same enactment made it illegal to advertise jobs in a way that encouraged sex discrimination. And that regulation of advertising is valid in light of the enactment's ban on sex discrimination in employment. We have a similar situation here, where our shared housing ordinance has made it illegal to rent shared housing in certain limited situations. And there's a parallel prohibition on listing shared housing units when the rental would be illegal. Apart from the First Amendment claims, plaintiffs also argue about the merits of their equal protection claims and their intimate and expressive association claims, which they raised for the first time in their second preliminary injunction motion. This court does not have jurisdiction to review the merits of those claims because the district court has not refused an injunction based on those claims. The district court's order which denied without prejudice the second preliminary injunction motion... So what do you think about my question? Is a district judge ever obliged to entertain multiple successive motions for a preliminary injunction? Certainly not obliged, Your Honor. Suppose the district judge says, I'm just refusing to entertain this motion. You've had one, let's go to the main event. Why isn't that order appealable? It might be summarily affirmed, but why is it not appealable? The order you're describing may be appealable, but that's not quite what has happened in this case because as the district court explained when the second motion... Yes, the district judge wasn't quite clear enough about what was happening. Well, respectfully, I think the court laid out its plan pretty clearly, which was that in the second motion, the plaintiffs raised new claims that could have and should have been brought in the first motion. The city desired to move forward... There's actually only one claim here. There are multiple legal arguments, but there's only one claim.  So the new arguments could have been raised at the outset. The city preferred to move forward by filing a motion to dismiss the amended complaint in its entirety rather than having to respond to this excessive motion. So why aren't you arguing to us that this should just be affirmed on the ground that we've been discussing, that it's just time to stop fiddling around with requests for preliminary relief and decide this case on the merits? We would happily accept that outcome, Your Honor. Here, in light of the district court's preference to allow the city to file a motion to dismiss, and then depending on how that motion is decided and depending on the outcome of this appeal, the court expressed a willingness to revisit the question of preliminary relief. We were okay with that plan as well, but if this court would rather resolve all the preliminary issues at this stage, that would be fine as well. So that creates a situation where the appeal could, it could pop right back up again, right? So suppose that we, in the primary appeal, agree with you on the merits of it. It goes back down and the motion to dismiss and the preliminary injunction on the amended complaint or the claims that are open in the amended complaint, the associational claims, we'd have a second appeal, right? A different aspect, different constitutional issue, to be sure, but same parties, same underlying regulation, second appeal. Probably. I suppose in that situation, it would be an appeal from a final judgment in terms of there having been a grant to the... Unless the district judge were to exercise her discretion to consider a second preliminary injunction, which she may not have to, but as you point out, she could. Right. Yeah, certainly that's a risk in this case. In light of the multiple preliminary injunction motions that had been filed, there could be likewise piecemeal appeals. So that's certainly a concern, a valid concern here. Finally, just briefly, with respect to plaintiff's argument that the parties agreed stay, that we entered into in the district court, that that should be the basis for an injunction now. And also with respect to the plaintiff's request that this case be reassigned to a different district court judge. Unless this court has any questions on those issues, we'll rest on our briefs. So for these reasons, the denial of the preliminary injunction should be denied and the other aspects of this appeal should be dismissed for lack of jurisdiction. Thank you. Thank you, Mr. Collins. Mr. Sato, you had 20 seconds. You may have two minutes. Thank you. Just briefly on the jurisdictional point, I know that it's been raised, and I think I mentioned this before, that these are successive motions for preliminary injunction. The city of Chicago did amend their law and the court ordered me to file a second motion for preliminary injunction. So I think that that distinguishes this notion. I'm not trying to,  This is a motion that courts always have leave to deny a motion. And I think that Justice Easterbrook is correct that even in that case, it could be appealable even if it would be summarily affirmed. And so this court has jurisdiction. I would also point out that if this court does find that it has jurisdiction, there have been no arguments made about the Association of Legal Protection Claims. So I think a fair question at that point for a preliminary injunction would issue. Finally, I will also rest on my briefs with respect to the issue of reassignment, with respect to what remedy this court would have. Again, the issue we're concerned with is if this case gets remanded without any strings attached, this could be essentially pocket vetoed and then that would result in more successive litigation. We would like at a minimum, there to be some guardrails on where this case is going because it's been 18 months since we've been in court and my client's claims deserve to be heard. Thank you very much. Thank you, Mr. Sodom. Mr. Collins, case is taken under advisement. The court will proceed to the second case of the day. Thank you.